BERTHA A. BRIGGS AND CLARA B. DOWNER, PARTNERS, TRADING AS THE MISSES 'BRIGGS, APPELLANTS, v. VERONICA PANNACI, RESPONDENT.

Submitted October 26, 1929—Decided May 19, 1930.

542

For the appellants, *Benjamin J. Downer*.

For the respondent, *Applegate, Stevens, Foster, Leonard & Reussille*.

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered on the verdict of a jury in favor of the defendant at the direction of the judge of the Circuit Court of Monmouth county, before whom the case was tried.

The plaintiffs instituted an action to recover damages for the value of their goods damaged by water, because of the alleged negligence on the part of the defendant in failing to keep in proper repair the roof over a storage room alleged to be in the retained control, use and possession of the defendant, and also for the value of the plaintiffs' business established in their store rented by the plaintiffs of defendant and damaged by the water, because the defendant knowingly and negligently maintained unsafe premises.

The defendant offered no evidence and cross-examined no witnesses, but at the conclusion of plaintiffs' case moved for a direction of a verdict in favor of defendant, which was granted.

The defendant was the owner of the Hotel Pannaci, located at Sea Bright, New Jersey. She rented to the plaintiffs under a written lease, dated March 18th, 1926, for a period of six months, beginning May 1st, 1926, "her small store known as the millinery shop" situate on the ground floor beneath the brick wing of the hotel.

The lease contained a renewal clause by virtue of which plaintiffs occupied the store "with the appurtenances" for the six months beginning May 1st, 1927.

During this renewal term, to wit, on July 23d, 1927, a heavy rain storm occurred and plaintiffs claim that by virtue of the defective condition of the roof over the storage room the water came through the roof over the storage room into the storage room and into the millinery shop and damaged her goods.

The brick wing to the hotel was three stories high. A part of the brick wing was divided into two small adjoining stores on the ground floor, each store had a rear entrance into a long room, known as the storage room, which was of a width equal to both stores and extended back and opened on the hotel yard.

This storage room was one story high and had a flat slag roof and formed a one-story extension of the hotel building at that point, the roof of the hotel wing being two stories higher than the roof of the extension.

In the northwest corner of the storage room was a toilet room. Plaintiffs leased the northerly of the two stores. At the time of the injury complained of, the adjoining store on the south was unoccupied. Adjoining plaintiffs' store on the north was a drug store.

The storage room was used by the defendant to store some of her surplus hotel furniture and also by the tenant of the drug store to store some of his supplies. The plaintiffs claimed that they had the right under their lease to use a designated part of the storage room for the storage of their goods and the use of the toilet and the passageway thereto in common with the tenant of the store adjoining on the south.

The lease described the demised premises in these words:

"The said party of the first part has letten and by these premises does let unto the said parties of the second part her *small store, known as the 'millinery shop.'*"

The lease contained a provision that the party of the first part was to have the ceiling of the millinery store fixed satisfactory to the parties of the second part. Aside from this there was nothing said in the lease about repairs to the store or storage room. The lease further provided that the party of the second part was to have the option of renewal of the lease for another year, *with the appurtenances.*

The plaintiffs do not claim that the injury to their goods was caused by any failure on the part of defendant to fix the ceiling of the "millinery shop," as required by the terms of the lease.

They base their claim to damage upon three distinct grounds:

1. Upon the general rule of reserved control on the part of the landlord of the storage room, which they claim placed upon the defendant the duty to repair and keep in repair the roof over the storage room.

2. Upon defendant's express verbal agreement that she would repair the roof of the *storage* room on the condition of plaintiffs' executing the lease, or its renewal.

3. That after the flooding of the storage room and store, the defendant negligently left her storage room in such a dangerous and unsafe condition that the plaintiffs were thereby obliged to and did permanently vacate the premises at the expiration of their 1927 term as unsafe and thereby their established business was destroyed by the maintenance on defendant's part of a continuing nuisance.

We do not find that the evidence sustains the contention of the plaintiffs upon any of these grounds.

The question to be determined is whether the facts in this case placed upon the landlord the obligation of maintaining the roof over the storage room in proper condition.

"In this state it is established as a general rule that the landlord is not liable for injury sustained by a tenant or his family, or guests by reason of the ruinous condition of the premises demised; there being upon the letting of a house or lands no implied contract or condition that the premises are or shall be fit and suitable for the use of the tenants."

"But it is recognized that the rule does not apply to those portions of his property [such as passageways, stairways and the like] that are not demised to the tenant, but are retained in the possession or control of the landlord for the common use of the tenants and those having lawful occasion to visit them, the ways being used as appurtenant to the premises demised."

"With respect to such ways it has been held that the landlord is under the responsibility of a general owner of real estate who holds out an invitation to others to enter upon and use his property, and is bound to see that reasonable care is exercised to have the passageways and stairways reasonably fit and safe for the uses which he has invited others to make of them." *Siggins* v. *McGill et al.*, 72 *N. J. L.* 263; 62 *Atl. Rep.* 411, and cases cited.

This court has also held in the case of *Perry* v. *Levy*, 87 *N. J. L.* 670; 94 *Atl. Rep.* 569, that the roof of an apart-

ment house, which is divided into several apartments, stands upon the same basis as the passageways, staircases and the like, so far as the landlord's liability for negligence, extends.

In the *Perry* v. *Levy Case, supra,* the roof covered all the tenants in the house and the court properly held that the tenant had no control over the roof, that the landlord was the only one who had such control and that it was therefore his duty to exercise reasonable care to keep the roof in such repair that its condition would not be a source of injury to the tenants underneath.

Unfortunately for the plaintiffs in the instant case, the facts do not bring them within the exception to the rule requiring the defendant landlord to assume the burden of maintaining the roof over the storage room in proper condition.

As stated before, there was nothing in the lease requiring the defendant to make repairs to the roof over the storage room.

The plaintiffs admitted and in fact claimed that the space used by them for storage in the storage room was part of the leased premises, and was included under the "appurtenances." In rendering its decision, the court below accepted the plaintiffs' contention that the "appurtenances" referred to in the lease included the space in the storage room used by plaintiffs for storing their goods.

There was no common passageway to this storage room. There was a door in the rear of the plaintiffs' store opening into the storage room used only by plaintiffs and their invitees, and another door in the rear of the adjoining store, opening into the storage room, used only by the tenant of the other store and his invitees. The defendant also had access through the door opening on the yard in the rear.

This storage room was not available to any other guests of the hotel, but a designated portion of it according to plaintiffs' case, was a part of the premises leased by the plaintiff, and as such was partly at least in their control. Certainly it could not be said to be in the exclusive control and possession of the defendant.

We think that since there was a definite letting of a part

of this storage room by the defendant to the plaintiffs the case does not come within the rule of reserved control on the part of the landlord, as laid down in the class of cases of which *Siggins* v. *McGill,* cited, *supra,* is a type.

We do not think that the doctrine relating to apartment and tenement houses applies to a situation like this where the storage building is not an appurtenance to the hotel, but was apparently built as an adjunct to the two stores, and where it appears that no one except the tenants of these stores, and their guests, employes and the defendant had a right to use this storage room, and the right of the plaintiffs came by a definite letting from the defendant.

The plaintiffs claim that it was necessary for the tenant of the adjoining store and for plaintiffs to make use of this storage room as a passageway to the toilet room, and that this fact brings the case within the landlord's reserved control rule.

The answer to this is that, assuming that such passageway was such as to impose a duty upon the defendant landlord to maintain and keep it in proper repair under said rule, there is nothing in the evidence to warrant the inference that the passageway was not in good repair. The damages sustained were not caused by the defective passageway. The plaintiffs claim that the defective condition of the roof, over the storage room caused the damage to their goods.

As to the second ground upon which the plaintiffs based their claim, namely, that the plaintiffs renewed the lease upon the express condition that defendant would repair the roofs of the storage room, we find this claim is not sustained by the evidence.

A written lease was executed subsequent to the alleged verbal promise to repair and no mention was made therein of any obligation on the part of the defendant to repair this roof, and this lease was the last word on the subject, and controlling as to the obligations of the defendant over any alleged verbal promises made prior thereto.

The last ground upon which plaintiffs base their claim is that by the flooding of the storage room and store the defendant negligently left her storage room in such a dangerous

and unsafe condition that the plaintiffs were thereby obliged and did permanently vacate the premises, and this caused them to lose an established business.

The testimony shows that the plaintiffs did not vacate the leased premises until the expiration of their lease.

If we are right in our conclusion that the defendant was not liable for damages occurring by reason of the defective condition of the roof, then no relief could be afforded the plaintiffs on the third ground upon which they base their complaint.

The plaintiffs further claim error on the part of the trial judge in refusing to permit one of the plaintiffs to answer questions, the purport of which was to show that the description of the store premises in prior leases was the same incomplete and ambiguous description as that contained in the proved lease of 1926-1927, and that the agreed leased premises for 1924 to 1927, inclusive, included not only plaintiffs' front store but also the use of part of the storage room together with the use in common with the tenant of the adjoining store of the toilet room, located in the storage room and a passageway to it through the storage room, and that the leaking roof over the storage room and over part of plaintiffs' store premises was more or less out of repair in 1924 and 1926.

We can see no impropriety in refusing to admit evidence as to the condition of the roof over the storage room for the years preceding the term of the lease of 1926-1927.

All the other facts sought to be established by these questions were assumed by the trial judge as proved by the plaintiffs, and upon these facts the court properly, we think, directed a verdict in favor of the defendant.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK. McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.